**LaMONICA HERBST & MANISCALCO, LLP**
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Joseph S. Maniscalco, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

GARY G DEROSA,

     Debtor.
-------------------------------------------------------------------X
Gary G. DeRosa, as representative of the bankruptcy estate of Gary G. DeRosa,


     Plaintiff,

  -against-

Martin Greenberg, as Trustee of the Martin Greenberg Revocable Trust Dated May 2, 2011,

     Defendant.
-------------------------------------------------------------------X

Chapter 11
Case No.: 19-75395 (REG)



Adv. Pro. No.:



**COMPLAINT**

   Gary G. DeRosa, the chapter 11 debtor and debtor in possession (the "Plaintiff") on behalf

of the estate of Gary G. DeRosa (the "Debtor"), by his attorneys, LaMonica Herbst & Maniscalco,

LLP, as and for his complaint (the "Complaint") against defendant Martin Greenberg, as Trustee

of the Martin Greenberg Revocable Trust Dated May 2, 2011 ("Defendant" or "Greenberg"),

alleges as follows:

## NATURE OF THE ACTION

   1.  This adversary proceeding is brought by the Debtor, as the estate representative, to

*inter alia*, (i) object to the amended proof of claim filed by the Defendant on March 5, 2020

identified as Claim 6-2; (ii) declaratory relief seeking an estimation and determination that the

Defendant has a secured claim in the amount of $606,000.00, as of the date hereof, or such lesser

amount as determined by the Court, and an unsecured claim against the Debtor's estate in the amount of $1,608,243.51, or such other amount as determined by the Court; (iii) attacking the nature, extent and validity of the purported asserted lien of the Defendant on the Debtor's assets; (iv) avoiding and setting aside the transfer of certain of the Debtor's assets contained in the State Court Stipulation (as defined herein) and Judgment (as defined herein)[1] as a fraudulent conveyance and/or preference in so far as each acted to elevate the Defendant's security interest in the Debtor's assets and was made within one year of the Filing Date; (v) directing the Defendant to immediately turn over the Collateral Notes (as defined herein) to Debtor's counsel to be held in escrow on behalf of the Debtor's estate, and directing those same Collateral Notes to be turned over to the Debtor after the May 2012 Notes (as defined herein) are fully paid; and (vi) for an accounting of all payments made by the Debtor to the Defendant in connection with Claim 6 and Claim 6-2.

## PRELIMINARY STATEMENT

2.     The Debtor, as the estate representative, seeks, among other things, declaratory relief and avoidance of the granting of a preference to the defendant Greenberg, his close personal friend, since the granting of certain liens to Greenberg substantially prejudiced the remaining creditors of the estate, including, but not limited to, the Internal Revenue Service (the "IRS") and NY State Department of Tax and Finance (the "NY State"), who have priority claims.  At a time when the Debtor was insolvent, not acting rational, and very emotional, he entered into a Stipulation with Greenberg in State Court that had the effect of elevating Greenberg's rights above all other creditors. At the time, the Debtor engaged in this behavior in order to show a good faith effort to his long-time friend so that the two can reconcile their differences.

---

[1]     The State Court Stipulation was entered within one year of the Filing Date and the Judgment was entered within ninety (90) days of the Filing Date.

3.      According to the Debtor, at that time he acted in this manner because he was not thinking of anything other than reconciling with his friend, and if he surrendered all of his assets to him, then it would be favorable for his friends' effort to sit with him and reconcile.

4.      Despite the Debtor's behavior, not only did Greenberg take the benefit of the assets turned over to him, but he denied all efforts to resolve differences with his friend until additional efforts were made.  Greenberg, engaging in behavior not consistent with good faith and fair dealing, continued to insinuate that he would sit with his friend and reconcile as long as the Debtor did certain things first (i.e., get Greenberg out of a lucrative real estate project, make a $250,000 good faith payment, surrender Collateral Notes to him, etc.).  Greenberg never complied with the benefit of the bargain he received.

5.      Unfortunately for the Debtor's estate, Greenberg continued to act improperly, continued to take assets under the guise of good faith and fair dealing, and then reneged each time. Now, the Debtor is in bankruptcy and Greenberg has continued to take an approach that he is entitled to all of the assets to the detriment of all other creditors and the Debtor.  As the representative of the estate, the Debtor has a duty to act in the best interest of all creditors and brings this action to level the playing field and finally behave and act as a reasonably prudent person for the benefit of all creditors.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

7.      The predicates for the relief sought herein include 11 U.S.C. §§ 105(a), 323, 502, 506, 541, 542, 544, 547, 548, 550 and 551, Rules 3007, 6009 and 7001 of the Federal Rules of Bankruptcy Procedure and New York common law.

8.      Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1409(a).

9.      This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(A), (B), (E), (F), (H), (K) and (O).

10.     Pursuant to Local Rule 7008-1 of the Bankruptcy Court for the Eastern District of New York, Plaintiff consents to the entry of final orders and judgments by the Bankruptcy Judge presiding over this adversary proceeding if it is determined that the Bankruptcy Judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

11.     The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157(a) and 1334. Venue of the Debtors' Chapter 11 cases and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

**THE PARTIES**

12.     Plaintiff is the representative of the Debtor's estate and an individual who resides at 21 Lumber Road, Apt. 31, Roslyn, New York 11576.

13.     Upon information and belief, Defendant is a revocable trust, managed and controlled by an individual named Martin Greenberg, with an address at 150 Horseshoe Road, Mill Neck, New York 11753.

**PROCEDURAL AND FACTUAL HISTORY**

**A.      The Debtor's Bankruptcy Filing**

14.     On August 1, 2019 (the "Filing Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), along with the required schedules (the "Schedules"), in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

15.     On August 30, 2019, the United States Trustee examined the Debtor at his meeting of creditors pursuant to 11 U.S.C. § 341(a) (the "341 Meeting").  The 341 Meeting was closed.

16.     The Debtor attended his initial Debtor interview with the United States Trustee and such meeting was concluded with the Debtor having provided all information requested by the United States Trustee.

17.     The Debtor has continued in management of his business and operation of his affairs as a debtor in possession pursuant to §§ 107 and 108 of the Bankruptcy Code.

18.     No trustee or examiner has been appointed and no official committee of unsecured creditors has been formed and the Debtor is current with the filing of all monthly operating reports. The Debtor has paid all relevant fees to the Office of the United States Trustee and has timely filed all of his operating reports in this case

19.     The Debtor, as the representative of the estate, is authorized to file this action pursuant to Bankruptcy Code § 323 and Bankruptcy Rule 6009.

**B.**     **The Marin Loan and the Start of Promissory Note Transactions with Greenberg**

20.     In or about the spring of 2012, while the Debtor (currently 71 years old) and Greenberg (currently 80 years old) were very close friends and played golf three to four times a week and socialized with their wives at dinner several times per week, the Debtor and Greenberg discussed different business opportunities and investments.

21.     According to the Debtor, Greenberg had asked the Debtor whether he had any business opportunities as the Debtor was a successful business owner as Greenberg knew the Debtor had previously sold his sand and gravel businesses.

22.     According to the Debtor, he advised Greenberg that he had an outstanding loan which was secured by a pledge of promissory notes that he received from a prior sale of his

business to an individual named Linda Marin (the "Marin Loan") at a twelve percent (12%) interest rate.

23.    According to the Debtor, he advised Greenberg that he would replace the Marin Loan if Greenberg would give him a better interest rate.

24.    According to the Debtor, Greenberg was interested in this opportunity and offered the Debtor an 11% rate of return. As a result, the Debtor contacted his attorney at Certilman Balin Adler & Hyman, LLP ("Certilman") to coordinate a buyout of the Marin Loan and a refinancing of that loan with Greenberg.

25.    According to the Debtor, due to his close personal relationship with defendant Greenberg, he wanted his friend to earn the interest.

26.    Attorneys at Certilman worked with the Debtor and defendant Greenberg to work through the Marin Loan and refinance of the Marin Loan transaction.

27.    In connection with this, Certilman organized a transaction between Greenberg and the Debtor for a refinance of the Marin Loan and defendant Greenberg wired the necessary funds to Certilman in order to consummate the transactions.

C.    **The May 2012 Promissory Notes and Collateral Provided**

28.    On or about May 21, 2012, in furtherance of the refinance of the Marin Loan, Greenberg entered two (2) different loan transactions with the Debtor each in the amount of $500,000.00. The first of the May 2012 notes (the "First May 2012 Note") executed by the Debtor provides that the Debtor would pay to Greenberg the principal sum of $500,000.00 with interest at 11% per annum and a monthly payment of $6,546.20 and had an amortization schedule for a period of eleven (11) years.

29.     According to the Debtor, he coordinated the eleven (11) year payment schedule to coincide with the notes the Debtor was receiving from the sale of one of his businesses. The amount of $338,388.67 of the First May 2012 Note was used to pay off the Marin Loan.

30.     As contemplated by the parties, the balance of approximately $162,000.00 of the First May 2012 Note, after payment of attorneys' fees was used for general expenses.

31.     According to the Debtor, he provided Greenberg with collateral through the escrow of notes the Debtor was entitled to receive in order to provide comfort level of the monthly payments due on the First May 2012 Note.

32.     According to the Debtor, he spoke to Greenberg extensively about the First May 2012 Note during their golf outing, lunch, dinners and spending time together.

33.     According to the Debtor, he provided collateral to insure that the payments he received, which were in excess of his obligations to Greenberg, would be promptly made.

34.     According to the Debtor, based on conversations between them, Greenberg knew about the collateral being provided and understood that the First May 2012 Note would be paid to Greenberg on a monthly basis as the Debtor received the money he was entitled to from notes that are property of the estate.

35.     The second of the May 2012 notes in the amount of $500,000.00 (the "Second May 2012 Note") also provided for a loan to the Debtor of $500,000.00 together with interest of 11% and a monthly payment of $5,545.10.

36.     The Second May 2012 Note had an amortization schedule and provides for payment over a period of 16 years.

37.     According to the Debtor, similar to the First May 2012 Note, he coordinated the sixteen (16) year payment schedule to coincide with the notes the Debtor was receiving from the sale of one of his businesses.

38.     In connection with the First May 2012 Note and Second May 2012 Note (collectively the "May 2012 Notes"), the Debtor executed a collateral pledge and assignment agreement (the "Pledge Agreement") in and to payments due to the Debtor and/or Custom Earth Products Inc. ("Custom Earth") under: (i) that certain note dated September 16, 2003 in the amount of $1,330,000.00 from Custom Recycling LLC, as maker, to Custom Earth, as payee (the "Custom Recycling Note"); and (ii) that certain note dated September 17, 2003 in the amount of $2,720,750.00 from John Watral, Paul Watral, Thomas Watral, Thomas Pratt and James Pratt, III, as maker (the "Watral Notes") to the Debtor as payee (collectively the "Collateral Notes").

39.     The Custom Recycling Note and the Watral Notes are property of the estate and owed to the Debtor subject to the May 2012 Notes being paid.

40.     The attorneys at Certilman acted in the best interest of both the Debtor and Greenberg as acted as the collateral agent holding the Collateral Notes

41.     As of the date hereof, the Custom Recycling Note and Watral Note have the following term left:

| Date of Note | Maker | Lender | Amount | Interest | Monthly Payment | Term |
|---|---|---|---|---|---|---|
| September 16, 2003 | Custom Recycling | Custom Earth/DeRosa | $1,330,000 | 6.5% | $ 9,916.12[2] | 2023 |
| September 17, 2003 | Watral, et al. | DeRosa | $2,072,550 | 6.5% | $13,995.39 | 2028 |

42.     The amount owed to the Debtor on the Custom Recycling Note and Watral Note collectively exceeds the monthly payments due to Greenberg under the May 2012 Notes.

---

[2]     Custom Earth/DeRosa receives $7,932.90 from this note as the Debtor is the 80% owner of Custom Earth and David Levine is the 20% owner and entitled to the balance.

43.     The amount owed to the Debtor on the Custom Recycling Note and Watral Note collectively exceeds the total amount owed to Greenberg on the May 2012 Notes.

44.     Since the Custom Recycling Note has a term and value left which exceeds what is owed to Greenberg, the Debtor can deaccelerate the note and continue to pay Greenberg the amount owed under the May 2012 Notes.

45.     Since the Watral Note has a term and value left which exceeds what is owed to Greenberg, the Debtor can deaccelerate the note and continue to pay Greenberg the amount owed under the May 2012 Notes.

46.     According to the Defendant's first proof of claim filed, the total amount owed under the May 2012 Notes, as of the date hereof, taking into consideration post-petition payments made through April 2020 is $606,600.97.

47.     According to the Debtor, the total value of the Custom Recycling Note and Watral Note, as of the date hereof, totals $1,716,780.00.

48.     According to the Debtor, the Debtor's estate is entitled to receive payments on the Custom Recycling Note of $7,932.00 x 40 payments for a total of $317,280.00.

49.     According to the Debtor, the Debtor's estate is entitled to receive payments on the Watral Note of $13,995.00 x 100 payments for a total of $1,399,500.00.

**D.      The Unsecured Promissory Notes with Greenberg**

50.     Two years later, on or about November 3, 2014, Greenberg loaned the Debtor $300,000.00 (the "November 2014 Note").

51.     On May 1, 2015, Greenberg loaned the Debtor $700,000.00 (the "May 2015 Note").

52.    On October 22, 2015, Greenberg loaned the Debtor $250,000.00 (the "October 2015 Note"). The November 2014 Note, the May 2015 Note and the October 2015 Note are collectively referred to as the "Unsecured Notes").

53.    As the Debtor had already provided the defendant Greenberg with the Collateral Notes, Defendant was not provided with any additional collateral for the payment of the Unsecured Notes.

54.    The defendant Greenberg, at the time of the November 2014 Note, knew the Debtor had no other collateral to provide yet continued to provide the Debtor with additional loans.

55.    The Defendant and the Debtor's relationship was stronger each year and the Debtor paid Greenberg each month on the May 2012 Notes and the Unsecured Notes.

56.    In addition to what is set forth herein, the Debtor had other note obligations with Greenberg which were all paid.

**E.    The Debtor and Defendant Greenberg's Close Personal Relationship**

57.    The Defendant loaned the Debtor the money for the May 2012 Notes and the Unsecured Notes due to their close personal relationship.

58.    At all times relevant, the Debtor and the defendant Greenberg were very close personal friends.

59.    At all times relevant, the Debtor and the defendant Greenberg would spend 3-4x per week together playing golf.

60.    At all times relevant, the Debtor acted as the Defendant's golf instructor and spent hundreds of hours with the Defendant teaching him how to play golf.

61.    At all times relevant, the Debtor treated the defendant Greenberg as one of his closest personal friends and even introduced him to his wife.

62.    At all times relevant, the Debtor and the defendant Greenberg spent countless hours with their wives together dining out, having lunches, spending time together and sharing personal interests and ideas with each other.

63.    According to the Debtor, at all times relevant, based on conversations with Greenberg, the Debtor's wife and the Defendant's wife were the best of friends and truly enjoyed each other's company.

64.    According to the Debtor, he and Greenberg exchanged texts on a daily basis.

65.    According to the Debtor, he and Greenberg spoke every day.

66.    At all times relevant, the Debtor and the defendant Greenberg shared numerous stories of their respective personal life, shared close personal stories about growing up, family, private matters, and discussed business as well.

67.    According to the Debtor, Greenberg often emailed the Debtor and his wife weekly.

68.    At all times relevant, the Debtor and the defendant Greenberg would discuss their assets, family, children, life issues, challenges and other aspects of personal interests only shared by people who are very close and not mere arms-length friends.

69.    The defendant Greenberg shared with the Debtor very close personal stories of his life growing up, treatment he experienced as a child, and other private matters not shared with business associates.

70.    Both the Debtor and defendant Greenberg shared interests and shared stories which created a common bond of affection and a close affinity relationship between the two of them.

71.    At all times relevant, people referred to the Debtor and the Defendant as "two peas in a pod", "if you saw one you saw the other", they "had similar mannerisms and even looked alike".

72.     The Debtor and Greenberg were involved in a very lucrative real estate development project called Gulhaven (as defined herein).

73.     The Debtor and the Defendant were very close personal friends under the definition of insider under 11 U.S.C. 101(31) and (45).

74.     At all times relevant, the Defendant was an insider under 11 U.S.C. 101(31).

**F.      The Debtor's Defaults under the Promissory Notes and the Good Faith Payment**

75.     On or about February 22, 2018, Greenberg's attorney sent a default letter to the Debtor in connection with the various promissory notes, both secured and unsecured, as identified above asserting that the Debtor defaulted in making the monthly payment due to the Defendant for July, 2017 (the "Default").

76.     Soon after the Default, according to the Debtor, on or about April, 2018, he believed that he entered into a forbearance payment to Greenberg in the amount of $250,000.00, plus $20,000.00 which was held in the escrow account of Greenberg's prior counsel, Mona Engel, Esq. (the "Good Faith $270K Payment").

77.     The Good Faith $270K Payment was made by the Debtor to defendant Greenberg to serve as a gesture of good faith to his best friend and to reconcile the differences.

78.     Based upon a review of the available documents and information, the Debtor was acting emotional at the time and clearly missed his best friend.

79.     The Debtor's behavior in providing the Good Faith $270K Payment without entering into a formalized written forbearance agreement was based on the Debtor's belief that he did not need a writing from Greenberg in order to resolve the claims.

80.     At the time, the Debtor believed that his friend's word was more than adequate to make the Good Faith $270K Payment.

81.     At the time, the Debtor believed that the Good Faith $270K Payment being made to Greenberg should be made without formal writing and would show Greenberg that the Debtor is interested in resolving the outstanding Default.

82.     At the time, the Debtor believed he knew Greenberg better than others and did not require formalized documents.

83.     The Debtor was in a poor emotional state at the time of the Good Faith $270K Payment and even directed that the application of a portion of the Good Faith $270K Payment be made to a personal handshake loan made by the Defendant to the Debtor **after** the Default date of $100,000.[3]

84.     At the time of the Oral Loan, it is clear the defendant Greenberg felt bad for his behavior with the wives and presumably missed his best friend.

85.     At all times relevant, according to the Debtor, based on conversations with Greenberg the defendant Greenberg believed the Debtor was his closest best friend.

**G.      The Gulhaven Real Estate Development Project**

86.     Since they were such good friends, the Debtor introduced the defendant Greenberg to a very lucrative business opportunity and real estate development project called Gulhaven (the "Gulhaven Project").

87.     At this time, the Debtor and Greenberg were involved in the Gulhaven Project together.

---

[3]      In or about the September 2017, even after the Debtor's default in making a monthly payment to defendant Greenberg on the various notes, defendant Greenberg loaned the Debtor $100,000 on a handshake to be repaid in one year with no interest (the "Oral Loan").  The Debtor returned the money through the Good Faith $270K Payment eight months later.

88.    The Gulhaven Project was a very lucrative real estate project that the Debtor and Greenberg were involved in together.

89.    The Gulhaven Project was a real estate development of the closed down NY Institute of Technology land.

90.    In or around the spring of 2018, the Gulhaven Project financing was coming up and defendant Greenberg was required to provide the necessary capital that he promised to do in order to fund the Gulhaven Project.

91.    At this time, defendant Greenberg came to the Debtor and started to make unfounded accusations about the people involved in the Gulhaven Project.

92.    The Gulhaven Project was going to be a very lucrative investment vehicle for the Debtor as he was to have an ownership piece and also a brokerage commission for putting the deal together with Greenberg and others.

93.    Defendant Greenberg continued to make unsubstantiated allegations and reneged on his promise to provide the necessary funding for the Gulhaven Project.  In essence, defendant Greenberg got "cold feet" and would not fund what he promised to fund.

94.    Greenberg's behavior placed the Debtor in a very uncomfortable position as he brought defendant Greenberg to the deal and represented that defendant Greenberg was a serious player in the industry.

95.    In view of the above, and to help his best friend get out of the deal that he was uncomfortable funding, the Debtor negotiated a resolution with all parties for defendant Greenberg to be bought out of the Gulhaven Project.

96.    In or about April 2018, defendant Greenberg was bought out of the Gulhaven Project and the Debtor (a) reduced his commission and received $250,000, which was used as part

of the Good Faith $270K Payment, (b) waived any right to any ownership in the Gulhaven Project, and (c) lost extensive business and profit from the Gulhaven Project (the "Gulhaven Transfer").

97.     As a result of the buyout, the Debtor and Greenberg would no longer be involved with any of the business partners for the Gulhaven Project.

98.     The Debtor and the estate lost a great opportunity from defendant Greenberg's inability to fund the Gulhaven Project and his behavior during the transaction which caused the Gulhaven Transfer.

99.     According to the Debtor, the unsubstantiated pressure and buyout of the Gulhaven Project caused the Debtor to lose millions of dollars related to the Gulhaven Transfer.[4]

**H.     The State Court Stipulation**

100.    On October 16, 2018, nine (9) months prior to the Filing Date, the Debtor entered into a stipulation with Greenberg authorizing the payors on the Collateral Notes to make all payments from the Custom Recycling Notes and Watral Notes directly to Greenberg (the "State Court Stipulation").

101.    The Debtor entered into the State Court Stipulation with the belief that his best friend would identify this event as a second "olive branch" of good faith and they would be able to sit down and resolve their differences.

102.    From the time of the Good Faith $270K Payment and the State Court Stipulation, the Debtor continued to make overtures of settlement proposals to defendant Greenberg. It was always conveyed to the Debtor that if the Collateral Notes were turned over and defendant Greenberg received the monthly payments directly, he would then behave differently.

---

[4]      The known and unknown transfers related to the Gulhaven Project shall be referred to herein as the "Transfer(s)".

103.    During this time, the Debtor was in an unstable emotional state from the situation with defendant Greenberg and wanted to resolve his differences.

104.    It was the Debtor's belief that the State Court Stipulation provided that Greenberg would receive payment on account of the May 2012 Notes from the Collateral Notes up until the payment in full of the Collateral Notes.

105.    Since the amount owed on the May 2012 Notes was much more than the monthly payments on the May 2012 Notes, according to the Debtor, once Greenberg received a consistent flow of monthly payments, the Debtor and defendant Greenberg would resolve the balance of the Unsecured Notes.

106.    The Debtor entered into the State Court Stipulation so that the Collateral Notes would be used to pay the May 2012 Notes in full.

107.    The Debtor was emotional and unstable during the time he made the decision to enter into the State Court Stipulation.

108.    The Debtor made the decision to enter into the State Court Stipulation because the original agreement he made with the Defendant, his very close friend, was to make sure that he would receive payment on the May 2012 Notes from the Collateral Notes.

109.    At all times relevant, the Debtor did not believe that the State Court Stipulation would provide Greenberg with any further rights aside from collecting the money owed on the May 2012 Notes from the Collateral Notes.

110.    The defendant Greenberg started to collect payment from the Collateral Notes against the May 2012 Notes on November, 2018, within one year of the Filing Date.

16

111.    Under the State Court Stipulation, Greenberg received $21,928.29 each month during the months November, 2018 through August, 2019, for a total amount of $219,282.90 (the "Pre-Petition Collateral Notes Payments").

112.    The Pre-Petition Collateral Notes Payments should be applied against the money owed under the May 2012 Notes.

113.    Defendant Greenberg is being paid down at a faster rate on the May 2012 Notes than provided for under the terms of the May 2012 Notes through the Collateral Notes.

114.    The turnover of the Collateral Notes under the State Court Stipulation was to provide defendant Greenberg with possession of the collateral to hold until such time as the May 2012 Notes were paid in full, and then to return the Collateral Notes back to the Debtor.

115.    The Collateral Notes are property of the estate subject to the claim of Greenberg under the May 2012 Note.

116.    The Collateral Notes should be turned over to the Debtor's estate.

**I.    The State Court Judgment**

117.    On May 9, 2019, the defendant Greenberg obtained a judgment against the Debtor and such judgment was entered by the Clerk of the Court in the County of New York (the "Judgment").

118.    The Judgment was entered within ninety (90) days of the Filing Date.

119.    The Debtor was insolvent at the time of the entry of Judgment.

120.    The Debtor was insolvent or rendered insolvent as a result of the Judgment.

121.    The Judgment provides that the Collateral Notes are to be used in order to satisfy the total Judgment amount.

122.    The Judgment is inconsistent with the terms and conditions of the Collateral Notes.

123.    The Judgment is inconsistent with the terms and conditions of the May 2012 Notes.

124.    While the defendant Greenberg had possession of the Collateral Notes at the time of the Judgment, the defendant Greenberg did not execute on the Judgment under the Civil Practice Law and Rules (the "CPLR") by properly perfecting against the Collateral Notes.

125.    Even if the defendant Greenberg properly executed on the Judgment under the CPLR, the execution of such Judgment and entering of such Judgment is a preference under § 547 of the Bankruptcy Code.

126.    Pursuant to Order of the Court dated February 13, 2020, the Debtor paid over to defendant Greenberg on account of the May 2012 Notes, the sum of $175,426.32 for payments during the period September 2019 through April 2020 (the "Post-Petition Payments").

127.    All payments made to defendant Greenberg pre-petition and post-petition should be applied against the May 2012 Notes, including the $35,000 payment and the $20,000 payment.

128.    The Collateral Notes are property of the estate.

129.    Defendant Greenberg is a secured creditor up to the value of the May 2012 Notes and thereafter must turn over the Collateral Notes to the Debtor as the estate representative for the benefit of all creditors, including administrative creditors, the IRS and NY State.

130.    The First May 2012 monthly payment to defendant Greenberg is $6,546.26.

131.    The Second May 2012 monthly payment to defendant Greenberg is $5,545.10.

132.    Defendant Greenberg has been collecting $21,928.29 per month on account of the May 2012 Notes collectively since November, 2018.

133.    Defendant Greenberg has been receiving $9,836.93 in excess of the amount owed to Greenberg on the May 2012 Notes on a monthly basis.

134.    If the Court deaccelerated the May 2012 Notes, Greenberg should receive $12,091.36 ($6,546.26 plus $5,545.10) per month on account of the total monthly May 2012 Notes, with the balance of $9,836.93 ($21,928.29 minus $12,091.36) being used to fund the Debtor's Chapter 11 plan for all creditors.

135.    The Custom Earth Recycling Note has 46 payments of $13,995.39 left for a total amount owed to the Debtor's estate of $456,141.

136.    The Watral Note has 94 payments left at $13,995 per month, or $1,315,566.67.

137.    As of the date hereof, the Debtor's estate is the beneficiary of notes from Custom Earth Recycling and Watral in the amount of $1,771,707.67 to pay its creditors' claims.

138.    As of the date hereof, defendant Greenberg is owed less than $600,000.00 on account of the May 2012 Notes.

139.    The amount in excess of what defendant Greenberg is owed under the May 2012 Notes is property of the estate and should be used for all creditors under the priority scheme provided for in the Bankruptcy Code.

## J.    Defendant Greenberg's Amended Proof of Claim

140.    On October 11, 2019, defendant Greenberg filed a proof of claim with the Court identified as Claim 6-1, under penalties of perjury, and asserted that he was owed $760,099.39 as a secured creditor, and $1,892,281,32 as an unsecured creditor (the "Greenberg POC").

141.    The Greenberg POC was accurate when filed.

142.    Defendant Greenberg reviewed the Greenberg POC before it was filed.

143.    Defendant Greenberg signed the Greenberg POC.

144.    Defendant Greenberg signed the Greenberg POC under penalties of perjury.

145.    On March 5, 2020, Greenberg filed an amended proof of claim, under penalties of perjury now asserting a claim as follows: (a) $1,251,147.62 as a secured claim; and (b) an unsecured claim in the amount of $1,235,050.07 (the "Greenberg Amended POC").

146.    The Greenberg Amended POC is grossly inflated.

147.    The Greenberg Amended POC miscalculates what is owed to Greenberg.

148.    The Debtor, as the estate representative, reserves the right to seek other and further relief and to recover assets for the benefit of the estate and all creditors.

149.    Upon information and belief, within two years of the Filing Date, the Debtor made transfers of his interest in property to, or for the benefit of, defendant Greenberg which will be revealed during discovery of this action.

150.    The Debtor had unsecured creditors at the time of the Transfers who were also creditors as of the Filing Date.

**FIRST CLAIM FOR RELIEF**
**(Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550)**

151.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "150" as if fully set forth herein.

152.    By the State Court Stipulation and the Judgment, the Debtor transferred interests of his property to Defendant.

153.    The Debtor entered into the State Court Stipulation to or for the benefit of Defendant.

154.    At the time of the State Court Stipulation and entry of the Judgment, Defendant was a creditor of the Debtor.

155.    At the time of the State Court Stipulation and Judgment, the Debtor had other creditors.

20

156.    Defendant received the benefit of the State Court Stipulation and the Judgment.

157.    The State Court Stipulation and entry of the Judgment were made on account of an antecedent debt owed by the Debtor before such transfer was made.

158.    The Debtor entered into the State Court Stipulation to benefit Greenberg in satisfaction of his obligations arising under the May 2012 Notes.

159.    At all times relevant, the Debtor was insolvent.

160.    The Debtor entered into the State Court Stipulation within one year before the Filing Date.

161.    At all times relevant, Defendant was an "insider" of the Debtor, as defined by 11 U.S.C. 101(31).

162.    The State Court Stipulation and the Judgment enabled Defendant Greenberg to receive more than he would have received if: (a) the State Court Stipulation and entry of the Judgment had not been made; and (b) defendant Greenberg received payment of his claim to the extent provided by the provisions of the Bankruptcy Code, or in accordance with the terms of the May 2012 Notes.

163.    By reason of the foregoing, pursuant to Bankruptcy Code §§ 547, 550 and 551, Plaintiff is entitled to a judgment against defendant Greenberg: (a) avoiding and setting aside the State Court Stipulation and entry of the Judgment; (b) in an amount to be determined at trial, but in no event is believed to be less than $160,000.00; and (c) deaccelerating the May 2012 Notes so that they are paid in accordance with their terms, or such other amounts as may be determined by the Court.

## SECOND CLAIM FOR RELIEF
### (Objection to Greenberg Amended POC)

164.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "163" as if fully set forth herein.

165.     There is no basis for the Greenberg Amended POC.

166.     Under 11 U.S.C. 502(d) and 506 of the Bankruptcy Code, the Greenberg Amended POC must be reduced and allowed as a secured claim as reflected in the Greenberg POC, subject to payments made to Greenberg on the Greenberg POC.

167.     The Greenberg Amended POC is improper and, as set forth above, should be reduced to the Greenberg POC, and further reduced to reflect payments made by the Debtor's estate since the Greenberg POC was filed in the amount of at least $153,498.03.

168.     The Greenberg POC is the correct amount owed to Greenberg as a secured claim.

169.     Since the filing of the Greenberg POC, Greenberg has received at least $153,498.03 on account of the secured portion of the Greenberg POC, which represents the May 2012 Notes.

170.     By reason of the foregoing, the Debtor's estate respectfully requests the entry of an Order reducing the secured portion of the Greenberg Amended POC to $600,600.97, or such other amount as determined by the Court.

## THIRD CLAIM FOR RELIEF
### (Determining Nature, Extent and Validity of Lien)

171.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "170" as if fully set forth herein.

172.     The Greenberg Amended POC is not a valid lien against the Collateral Notes to the extent of the secured portion identified in the Greenberg Amended POC.

173.     The Greenberg Amended POC is grossly inflated against what the Debtor owes.

174. The Collateral Notes are property of the estate.

175. The Collateral Notes value exceeds the value of what Defendant Greenberg is owed as a secured creditor of the Debtor's estate.

176. By reason of the foregoing, the Debtor's estate seeks to attack the nature, extent and validity of the lien asserted by the Greenberg Amended POC, and reduce the Greenberg Amended POC's secured claim to the Greenberg POC's secured claim.

177. Plaintiff's estate is entitled to a judgment against the Defendant under 11 U.S.C. 502 and 506: (a) declaring that the Greenberg POC is a secured claim against the Debtor's estate, asserted against the Collateral Notes, in the current amount of $606,600.97; (b) declaring that defendant Greenberg does not have a lien in excess of $600,600.97 against the Collateral Notes, as of the date hereof, (c) directing Greenberg to turn over the Collateral Notes as property of the estate to the Debtor, or its counsel, to be held in escrow pending the payment of the Greenberg POC in the secured amount of $600,600.97; and (d) preserving the Custom Earth Note and the Watral Note for the benefit of the Debtor's estate and its creditors pursuant to Bankruptcy Code § 551.

## FOURTH CLAIM FOR RELIEF
(Declaratory Judgment)

178. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "177" as if fully set forth herein.

179. The Defendant claims an interest in the assets of the Debtor's estate by asserting a secured claim in and to assets which are property of the estate.

180. The Greenberg Amended POC asserts an interest adverse to the Debtor's estate and its creditors.

181.    The Debtor's estate disputes the amount asserted in the Greenberg Amended POC as secured.

182.    There is an actual justiciable controversy between the Debtor's estate and Greenberg related to the Greenberg POC and the Greenberg Amended POC.

183.    Plaintiff's estate is entitled to a judgment against the Defendant: (a) declaring that the Greenberg POC is a secured claim against the Debtor's estate, to wit: the Collateral Notes, in the current amount of $606,600.97; (b) declaring that the Debtor's estate is the lawful owner and vested with title in and to the Collateral Notes, subject to the Greenberg POC being secured in the amount of $606,600.97; (c) determining that the Defendant holds no secured claim against the Collateral Notes and/or the Debtor's estate beyond $606,600.97 as of the date hereof; (d) disallowing the Greenberg Amended POC against the Debtor's estate related to the Collateral Notes in its entirety pursuant to Bankruptcy Code § 502 above any amount asserting a secured claim in excess of $606,600.97; and (e) preserving the Custom Earth Note and the Watral Note for the benefit of the Debtor's estate and its creditors pursuant to Bankruptcy Code § 551.

### FIFTH CLAIM FOR RELIEF
### (Fraudulent Conveyance Pursuant to 11 U.S.C. § 548(a)(1)(A))
### (The State Court Stipulation and Judgment)

184.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "183" as if fully set forth herein.

185.    The State Court Stipulation and Judgment were obtained within two (2) years of the Filing Date.

186.    The State Court Stipulation was executed and delivered to Defendant with the actual intent to hinder or delay the Debtor's present and future creditors.

187.    The Debtor's estate received less than reasonable equivalent value in exchange for the State Court Stipulation and entry of Judgment.

188.    Accordingly, pursuant to sections 548(a)(1)(A), 550 and 551 of the Bankruptcy Code, Plaintiff's estate is entitled to the entry of judgment against Defendant: (a) avoiding and setting aside the State Court Stipulation and Judgment as a fraudulent conveyance to the extent that it provided Greenberg with rights greater than the Greenberg POC; and (b) recovering from Defendant an amount as yet undetermined, together with interest thereon.

**SIXTH CLAIM FOR RELIEF**
**(Fraudulent Conveyance Pursuant to 11 U.S.C. § 548(a)(1)(B))**
**(The State Court Stipulation and Judgment)**

189.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "188" as if fully set forth herein.

190.    The State Court Stipulation and entry of Judgment occurred and was delivered within two (2) years of the Filing Date.

191.    The Debtor received less than reasonable equivalent value in exchange for the Deed.

192.    Upon information and belief, the Debtor (a) was insolvent on the date that the State Court Stipulation was executed and delivered or became insolvent as a result thereof, (b) was engaged in business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with it was unreasonably small capital, or (c) intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as they matured.

193.    By the State Court Stipulation, the Debtor improperly benefitted the Defendant over all other creditors of the estate.

194.    The Debtor knew or should have known that the State Court Stipulation would benefit only the Defendant to the detriment of the estate's creditors.

195.    The Debtor knew or should have known he had existing unsecured creditors other than Greenberg at the time of the State Court Stipulation.

196.    Defendant caused and/or allowed the Debtor to enter into the State Court Stipulation.

197.    Defendant knew or should have known the State Court Stipulation would harm or prejudice the Debtor's other creditors.

198.    Defendant accepted the payments under the State Court Stipulation and Judgment from the Debtor knowing it would harm the Debtor's estate and its creditors.

199.    Defendant did not accept the payments under the State Court Stipulation in good faith.

200.    Upon information and belief, Defendant did not provide reasonably equivalent value in exchange for the payments made under the State Court Stipulation or the Judgment.

201.    Upon information and belief, Defendant did not provide any consideration or value to or for the benefit of the Debtor in exchange for the State Court Stipulation or the Judgment once he filed the Greenberg Amended POC.

202.    Accordingly, pursuant to sections 548(a)(1)(B), 550 and 551 of the Bankruptcy Code, Plaintiff's estate is entitled to the entry of judgment against Defendant: (a) avoiding and setting aside the State Court Stipulation and Judgment as a fraudulent conveyance to the extent that it provided Greenberg with rights greater than the Greenberg POC; and (b) recovering from Defendant an amount as yet undetermined, together with interest thereon.

## SEVENTH CLAIM FOR RELIEF
### (Fraudulent Conveyance Pursuant to 11 U.S.C. § 548(a)(1)(A))
### (The Transfers to or for the benefit of Defendant Greenberg)

203.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "202" as if fully set forth herein.

204.    The Transfers identified herein and made to or for the benefit of Defendant Greenberg were made within two (2) years of the Filing Date.

205.    The Transfers were made by the Debtor had no leverage, was in no bargaining position, was being taken advantage of by Greenberg and delivered to Defendant with the actual intent to hinder or delay the Debtor's present and future creditors.

206.    The Debtor's estate received less than reasonable equivalent value in exchange for the Transfer made to or for the benefit of Defendant Greenberg.

207.    Accordingly, pursuant to sections 548(a)(1)(A), 550 and 551 of the Bankruptcy Code, Plaintiff's estate is entitled to the entry of judgment against Defendant: (a) avoiding and setting aside the Transfers, presently known and unknown as a fraudulent conveyance; and (b) recovering from Defendant an amount as yet undetermined, together with interest thereon the value of the Transfers presently known and unknown.

## EIGHTH CLAIM FOR RELIEF
### (Fraudulent Conveyance Pursuant to 11 U.S.C. § 548(a)(1)(B))
### (The Transfers to Defendant Greenberg)

208.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "207" as if fully set forth herein.

209.    The Transfer were made to or for the benefit of Defendant Greenberg and delivered within two (2) years of the Filing Date.

210.    The Debtor received less than reasonable equivalent value in exchange for the Transfer, presently known and unknown.

211.    Upon information and belief, the Debtor (a) was insolvent on the date that the Transfers, presently known and unknown, occurred or became insolvent as a result thereof, (b) was engaged in business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with it was unreasonably small capital, or (c) intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as they matured.

212.    Accordingly, pursuant to sections 548(a)(1)(B), 550 and 551 of the Bankruptcy Code, Plaintiff's estate is entitled to the entry of judgment against Defendant: (a) avoiding and setting aside the Transfers, presently known and unknown as a fraudulent conveyance; and (b) recovering from Defendant an amount as yet undetermined, together with interest thereon the value of the Transfers presently known and unknown.

### NINTH CLAIM FOR RELIEF
### (Unjust Enrichment)

213.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "212" as if fully set forth herein.

214.    Defendant received or obtained the benefit of the additional payments made on the Greenberg POC.

215.    Defendant did not provide the Debtor's estate with consideration in exchange for the transfers made in excess of the amount due under the May 2012 Notes.

216.    Defendant failed to return the Transfers to the Debtor's estate.

217.    It would be unjust to allow Defendant to retain the Transfers, presently known and unknown, or such amount in excess of the payments made to deaccelerate the May 2012 Notes

because Defendant did not provide consideration to the Debtor's estate in exchange for those Transfers.

218.    By reason of the foregoing, Debtor's estate is entitled to an award against Defendant in an amount to be determined at trial, but in no event is believed to be less than $160,000.00, plus interest thereon from the date of the transfers, attorneys' fees and costs, and such other amounts as may be determined by the Court.

## TENTH CLAIM FOR RELIEF
### (Property of the Estate)

219.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "218" as if fully set forth herein.

220.    The Debtor has a legal and equitable interest in the Collateral Notes, which comprise the Custom Earth Note and the Watral Note.

221.    The Debtor's legal and equitable interest in the funds comprising the Collateral Notes, which comprise the Custom Earth Note and the Watral Note is property of the estate.

222.    Upon information and belief, defendant Greenberg is holding assets which are property of the bankruptcy estate.

223.    By reason of the foregoing, and in accordance with Bankruptcy Code §§ 541 and 542, the Plaintiff is entitled to the entry of an Order and Judgment, on behalf of the Debtor's estate, directing defendant Greenberg to turn over the Debtor, as the estate representative, or the Debtor's counsel, the Custom Earth Note and the Watral Note to be held in escrow subject to payment by the Debtor on the Collateral Notes.

**WHEREFORE**, the Debtors estate respectfully requests that the Court enter and order and judgment in its favor and against Defendant Greenberg as follows:

i.          On the First Claim for Relief, pursuant to Bankruptcy Code §§ 547, 550 and 551, Plaintiff is entitled to a judgment against defendant Greenberg: (a) avoiding and setting aside the State Court Stipulation and entry of the Judgment; (b) in an amount to be determined at trial, but in no event is believed to be less than $160,000.00; and (c) deaccelerating the May 2012 Notes so that they are paid in accordance with their terms, or such other amounts as may be determined by the Court;

ii.          On the Second Claim for Relief, entry of an Order reducing the secured portion of the Greenberg Amended POC to $600,600.97, or such other amount as determined by the Court;

iii.          On the Third Claim for Relief, the entry or an order and judgment against the Defendant: (a) declaring that the Greenberg POC is a secured claim against the Debtor's estate, asserted against the Collateral Notes, in the current amount of $606,600.97; (b) declaring that defendant Greenberg does not have a lien in excess of $600,600.97 against the Collateral Notes, as of the date hereof, (c) directing Greenberg to turn over the Collateral Notes as property of the estate to the Debtor, or its counsel, to be held in escrow pending the payment of the Greenberg POC in the secured amount of $600,600.97; and (d) preserving the Custom Earth Note and the Watral Note for the benefit of the Debtor's estate and its creditors pursuant to Bankruptcy Code § 551;

iv.          On the Fourth Claim for Relief, the entry of an order and judgment against the Defendant: (a) declaring that the Greenberg POC is a secured claim against the Debtor's estate, to wit: the Collateral Notes, in the current amount of $606,600.97; (b) declaring that the Debtor's estate is the lawful owner and vested with title in and to the Collateral Notes, subject to the

Greenberg POC being secured in the amount of $606,600.97; (c) determining that the Defendant holds no secured claim against the Collateral Notes and/or the Debtor's estate beyond $606,600.97 as of the date hereof; (d) disallowing the Greenberg Amended POC against the Debtor's estate related to the Collateral Notes in its entirety pursuant to Bankruptcy Code § 502 above any amount asserting a secured claim in excess of $606,600.97; and (e) preserving the Custom Earth Note and the Watral Note for the benefit of the Debtor's estate and its creditors pursuant to Bankruptcy Code § 551;

v.       On the Fifth and Sixth Claims for Relief, pursuant to sections 548(a)(1)(A), 550 and 551 of the Bankruptcy Code, the entry of an order and judgment against Defendant: (a) avoiding and setting aside the State Court Stipulation and Judgment as a fraudulent conveyance to the extent that it provided Greenberg with rights greater than the Greenberg POC; and (b) recovering from Defendant an amount as yet undetermined, together with interest thereon;

vi.      On the Seventh and Eighth Claims for Relief, pursuant to sections 548(a)(1)(B), 550 and 551 of the Bankruptcy Code, the entry of an order and judgment against Defendant: (a) avoiding and setting aside the Transfers, presently known and unknown as a fraudulent conveyance; and (b) recovering from Defendant an amount as yet undetermined, together with interest thereon the value of the Transfers presently known and unknown;

vii.     On the Ninth Claim for Relief, the entry or an order and judgment against Defendant in an amount to be determined at trial, but in no event is believed to be less than $160,000.00, plus interest thereon from the date of the transfers, attorneys' fees and costs, and such other amounts as may be determined by the Court;

viii.    On the Tenth Claim for Relief, in accordance with Bankruptcy Code §§ 541 and 542, the entry of an Order and Judgment, on behalf of the Debtor's estate, directing defendant

Greenberg to turn over the Debtor, as the estate representative, or the Debtor's counsel, the Custom Earth Note and the Watral Note to be held in escrow subject to payment by the Debtor on the Collateral Notes;

 ix.  On all claims, awarding pre- and post- judgment interest, costs and disbursements as allowed by law;

 x.  On all claims, awarding attorneys' fees as allowed by law; and

 xi.  On all claims, awarding such other and further relief as may appear just and proper.

Dated: April 22, 2020
   Wantagh, New York

     **LaMONICA HERBST & MANISCALCO, LLP**
     Attorneys for Gary G. DeRosa

   By: *s/ Joseph S. Maniscalco*
     Joseph S. Maniscalco, Esq.
     A Member of the Firm
     3305 Jerusalem Avenue, Suite 201
     Wantagh, New York 11793
     Telephone: (516) 826-6500